OPINION
{¶ 1} Appellant, Rachel Schueler, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her four children to Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
 {¶ 2} Appellant and Jason F. Gross[1] are the biological parents of Kaleb Schueler, born October 2, 1999, Jason Gross, Jr., born February 24, 1996, and Stephen Schueler, born November 22, 1997. Appellant is also the biological mother of Austin Schueler, born February 3, 1994. Austin's biological father is unknown.
 {¶ 3} BCCSB received a referral to investigate charges of child neglect against appellant. On February 7, 2001, a BCCSB caseworker arrived at the home with Fairfield police officers and found no food in the residence, piles of debris, feces and garbage throughout the home, and standing water in the bathtub. She also noted an odor of feces and urine emanating from the residence. The caseworker also saw urine and feces in the children's beds and piles of feces underneath the beds. Fairfield police arrested appellant on four counts of endangering children, and the children were removed from the home.
 {¶ 4} On February 8, 2001, BCCSB filed a complaint alleging the children to be neglected and dependent pursuant to R.C. 2151.04, and requested that the juvenile court grant temporary custody of them to BCCSB. BCCSB was granted temporary custody and the children were placed in foster care.
 {¶ 5} Appellant was subsequently indicted and found guilty as to the four counts of endangering children and was sentenced to five years of community control. However, because of this verdict, appellant was found to have violated the conditions of community control imposed upon her as a result of two previous convictions for obstructing justice in Hamilton County. The Hamilton County court revoked her community control and sentenced her to prison for 18 months on each count to be served consecutively.
 {¶ 6} On June 20, 2001, BCCSB moved for permanent custody and termination of parental rights. On January 18, 2002, the trial court found the children to be neglected or dependent children. The magistrate conducted subsequent hearings as to the motion for permanent custody. On August 2, 2002, the magistrate granted permanent custody of the children to BCCSB.
 {¶ 7} On August 27, 2002, appellant filed objections to the magistrate's decision. On November 21, 2002, the trial court reviewed the magistrate's decision, overruled appellant's objections and adopted the magistrate's decision. Appellant appeals this decision raising one assignment of error.
Assignment of Error No. 1
 {¶ 8} "The Trial Court's Decision Placing Custory [sic] With The BCCSB Is Not Supported By Clear And Convincing Evidence."
 {¶ 9} Appellant maintains that she has not been afforded the opportunity to remedy "this situation behind the child endangering charges." She further argues that her mother, Charlotte Vallejos, is willing to care for the children and would be a viable placement for them.[2]
 {¶ 10} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 102 S.Ct. 1388. Because of this constitutionally protected liberty interest, due process requires the state to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that "the measure or degree of proof * * * produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 11} A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479. The trial court is required to make specific statutory findings when deciding a permanent custody case. See In re William S., 75 Ohio St.3d 95, 1996-Ohio-182. The reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. Id.
 {¶ 12} When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, a juvenile court should consider all relevant factors enumerated in R.C. 2151.414(D), which include but are not limited to the following:
 {¶ 13} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 14} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 15} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 16} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 17} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 18} The trial court must also find by clear and convincing evidence that any of the enumerated factors in R.C. 2151.414(B)(1) apply in order to grant permanent custody to a state agency. This includes in pertinent part, "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1)(d). All four children have been in the custody of BCCSB for more than 12 months within a consecutive 22-month period.
 {¶ 19} We find that the trial court's determination that it is in the best interest of Kaleb, Jason, Stephen and Austin to be permanently placed in the custody of BCCSB is supported by clear and convincing evidence.
 {¶ 20} During the trial, there was testimony that appellant's home smelled of feces and urine. One BCCSB caseworker stated that feces were smeared on the children's beds. She also noted that there were piles of garbage throughout the home and piles of feces beneath the beds. There was no food in the home and there was standing water in the bathtub. The BCCSB caseworker also noted that the children had been removed from the home on more than two prior occasions.
 {¶ 21} Jason, Stephen and Austin's therapist testified that the behavioral issues presented by the children were related to the care received from their mother. She also noted an improvement in their behavior since they had been placed in foster care. The therapist also testified that Jason has been diagnosed with bi-polar effective disorder with mixed features, and Stephen with reactive attachment disorder. Finally, she testified that the children need permanency.
 {¶ 22} Another BCCSB caseworker noted that a home study was requested of Hamilton County for the maternal grandparents, Mr. and Mrs. Vallejos, for the placement of the children, but was denied. One reason noted was that Mr. Vallejos had pled guilty to the sexual abuse of his stepdaughter, appellant. A third BCCSB caseworker testified that when Mrs. Vallejos visited the children she spent the majority of her time with Austin, ignoring the three other children who were running around, grabbing and throwing toys. Mrs. Vallejos did not redirect the children. She also noted that, even though asked not to do so, Mrs. Vallejos discussed custody issues with the children. Mrs. Vallejos visitations were terminated in December of 2001.
 {¶ 23} Based on the factors in R.C. 2151.414(D) and all relevant evidence in the record, we find that there was clear and convincing evidence before the trial court that it was in Kaleb, Jason, Stephen and Austin's best interest for BCCSB to be granted permanent custody. The testimony at the permanent custody hearing shows that the children were not cared for and had been in and out of BCCSB custody. The children have been removed from appellant's home on more than two occasions. The children had currently been in BCCSB custody for more than a 12-month period. Appellant resides in jail, serving two consecutive 18-month sentences. The court noted that she would be incarcerated until late 2004. The children's therapist testified that the children needed permanency. According to one of the BCCSB caseworker's testimony, Hamilton County found that the Vallejos home was not a viable placement for the children.
 {¶ 24} Taking into consideration all the evidence in the record, we find that the trial court did not err in granting BCCSB's motion for permanent custody. Appellant's assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and YOUNG, J., concur.
[1] Jason Gross was present at the permanent custody hearing and represented by counsel, but has not appealed the trial court's decision.
[2] We note that the guardian ad litem for the children offered a counter argument that appellant did not raise issues pertaining to the sufficiency of the evidence in her objections to the magistrate's decision. After reviewing appellant's objections to the magistrate's decision, we find that she did adequately raise her objection as to the insufficiency of the evidence to the trial court.